gence of the sailing vessel, and her failure to comply with the statute requiring her to bear a light which can be seen at a distance of two miles, have led the steamer into danger of collision, it is not for the sailing vessel to insist that, by more than usual vigilance, she might, nevertheless, have been discovered at a few yards greater distance, and to claim contribution on that ground. In this case, I think there is a failure to show that the brig could have been seen from the steamer sooner than she was. Certainly, the proof does not show it so clearly as to warrant a decree declaring the steamer in fault.

When the brig was discovered, I do not perceive that any thing was omitted which could have tended to save the brig. The steamer's helm was hove a-starboard. and her engine was stopped and reversed. The propriety of these manoeuvers cannot be questioned. They were done immediately, and the manner of the blow shows that they were very nearly effectual to cause the steamer to pass astern of the brig.

Without discussing the very prolix testimony of the various witnesses, it must suffice to add that, upon a most pains-taking consideration of the case, I think the conclusions of the district court were correct, and that the libellants have failed to put the steamer in fault.

The decree must be affirmed, with costs.

[NOTE. On appeal to the supreme court this decree was reversed, with directions that a decree be entered dividing the damages between the steamer and the brig, for the reason that proper vigilance on the part of the steamer's lookout might have avoided the disaster. The Ariadne, 13 Wall. (80 U. S.) 475. See note to The Ariadne, Case No. 524.]

## Case No. 526.

### The ARIADNE.

### [1 Pet. C. C. 455.][1]

Circuit Court, D. Pennsylvania. Oct. Term, 1817.

ADMIRALTY PRACTICE — PAYMENT OF PROCEEDS BEFORE DECREE—RULE TO RETURN.

Where money had been paid by an order of the district court. under an erroneous construction of an act of congress, before a final order of the circuit court. in which the suit for the same was pending, the circuit court granted a rule on the person who had received the money to return it.

[In admiralty. Heard on motion for a rule requiring the persons who had received the money resulting from the condemnation of the vessel to return the same to the court. For report of the case as heard in the supreme court, see The Ariadne. 2 Wheat. (15 U. S.) 143.]

The supreme court having affirmed the sentence of this court condemning this vessel and her cargo as prize, the mandate was presented at the last term, but no order was made respecting the distribution of the

[1][Reported by Richard Peters, Jr., Esq.]

money. In June last the money was paid into bank, to the credit of this court. At a district court lately held, the judge of that court ordered the money to be paid over in part to the captain of the Argus, who made the capture, and a part to the district attorney.

Mr. Woodward now moved for a rule upon the persons who had received the money under the above order, to return the same to this court, or, on failure, that an attachment should issue. He contended, that the whole subject was in this court, under the mandate, and that no order to take the money out of the bank, could issue by any judge in vacation, under the act of the last session of congress, until this court had made an order of distribution amongst the claimants; and that even then, the captain had no right to receive the parts belonging to his officers and crew, without a regular power of attorney from them.

THE COURT granted the rule.

Before WASHINGTON, Circuit Justice. and PETERS, District Judge.

═══

ARIADNE, The, (UNITED STATES v.) See Case No. 14,465.

═══

## Case No. 527.

### The ARIEL.

### [1 Hask. 65.][1]

District Court, D. Maine. Feb., 1867.

CUSTOMS DUTIES—PROPERTY SUBJECT TO —DOMESTIC GOODS SHIPPED FROM FOREIGN PORT TO AID IN CONCEALING FOREIGN GOODS — MANIFEST — ADMIRALTY—GOODS SEIZED ON LAND.

1. Goods shipped from one domestic port to another, and on the voyage taken to a foreign port with the design and purpose to disguise the character of the vessel. and conceal foreign goods there taken on board to be smuggled, become incorporated into, and a part of an entire cargo to be imported from thence.

2. Goods seized on land are not subject to condemnation and forfeiture in admiralty.

3. A claimant. who has voluntarily destroyed the ship's manifest to prevent its being used as evidence, cannot prove its contents by secondary evidence.

4. A sufficient manifest must state, first by whom the goods are shipped. second, if part of the cargo is brought back, by whom shipped out, and to whom consigned inward.

5. For want thereof, goods, belonging to one of the officers or crew of a vessel belonging in whole or in part to an American citizen. are liable to forfeiture under section 24 of the act of 1799, [1 Stat. 646.]

6. If a manifest is not produced to the proper officers, or its nonproduction accounted for to the satisfaction of the court, a forfeiture attaches to the goods imported.

7. An attempt to import merchandise from a foreign port as coming directly from a do-

[1][Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]